UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| THE CIT GROUP/COMMERCIAL SERVICES, INC., | ) ) ) | |
| Appellant, | ) ) | Civil No. 12-16-ART |
| v. | ) ) ) | |
| CONSTELLATION ENERGY COMMODITIES GROUP, INC. and CONSTELLATION ENERGY GROUP, INC., | ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Appellees. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"A man should never be ashamed to own he has been in the wrong, which is but saying, in other words, that he is wiser today than he was yesterday."  Alexander Pope, *Thoughts on Various Subjects*, *reprinted in* 10 THE WORKS OF ALEXANDER POPE 551 (John Wilson Croker ed., 1886) (1727).  Thankfully the bankruptcy rules provide a mechanism by which judges can correct their mistakes.  *See* Fed. R. Bankruptcy P. 8015.  The appellant, CIT Group/Commercial Services ("CIT Group"), invoked Rule 8015 and asked the Court to rehear this case.  R. 22.[1]  But a rehearing is not called for in this case because CIT Group has not shown that this Court's earlier opinion contained a clear error of fact or law.

---

[1] Citations to the Bankruptcy Court's record are indicated by "Bankruptcy R. __."  Citations to the bankruptcy court opinion are indicated in the following form:  *The CIT Grp./Commercial Servs., Inc. v. Constellation Energy Commodities Grp. (In re Black Diamond Mining Co., LLC)*, No. 08-7017, 2011 WL 6202905, at \*__ (Bankr. E.D. Ky. Dec. 13, 2011).  Citations to this Court's record are indicated by "R. __."

**BACKGROUND**

This opinion only recounts the facts relevant to the motion for rehearing.  The full facts of the case are explained in this Court's earlier opinion.  R. 20.

CIT Group financed the operations of Black Diamond Mining Company, LLC ("Black Diamond"), a coal company.  Through a series of coal supply agreements, Black Diamond agreed to sell Constellation Energy Commodities Group, Inc. ("Commodities") predetermined quantities of coal each month at a fixed price per ton.  Commodities's parent company Constellation Energy Group, Inc. ("Constellation") guaranteed Commodities's payments to Black Diamond for that coal.  Closing the circle, Black Diamond then sold its interest in those payments (known as accounts receivable) to CIT Group.  *See id.* at 2–3.  The current case pits CIT Group against Commodities and Constellation.

The coal supply agreements contained nearly identical provisions relating to default, termination damages, liquidated damages for missed deliveries, and payment rights.  *See id.* at 6.  There were more than thirteen possible ways Black Diamond or Commodities could default on the agreements—listed as "Events of Default"—including paying late and going bankrupt.  *Id.* at 7.  If a party defaulted, the other party could stop performing on the contract until the default was cured or it could end the contract and collect damages.  *Id.*  Along with the written-coal supply agreements, Black Diamond and Commodities entered into a series of oral agreements for the delivery of coal to Commodities.  *See* R. 16 at 37.

Black Diamond quickly developed cash-flow troubles and was unable to deliver coal to Commodities as the coal supply agreements required.  *See* R. 20 at 11.  On February 19,

2008, CIT Group (along with others financing Black Diamond's operations) filed an involuntary bankruptcy petition against Black Diamond.  On March 11, 2008, the bankruptcy court entered an order for relief in the involuntary proceeding.  *The CIT Grp./Commercial. Servs., Inc. v. Constellation Energy Commodities Grp. (In re Black Diamond Mining Co., LLC)*, No. 08-7017, 2011 WL 6202905, at *15 (Bankr. E.D. Ky. Dec. 13, 2011).

The bankruptcy was an event of default under the coal supply agreements.  *See* R. 20. at 7.  In response, Commodities terminated the agreements and sought over eighty-two million dollars in damages from Black Diamond.  Those damages included the already-accrued debts as well as future losses for undelivered coal, minus the amounts that Commodities owed to Black Diamond under the agreements.  *Id.* at 12.  Commodities filed a proof of claim during the bankruptcy proceedings to recover those damages.  *Id.*

CIT Group then filed an adversary proceeding against Commodities.  *Id.*  CIT Group claimed (among other things) that Commodities owed Black Diamond over fifteen million dollars under the coal supply agreements, which belonged to CIT Group as Black Diamond's assignee.  *Id.* at 13.

The bankruptcy court granted summary judgment in favor of Commodities.  *See The CIT Grp./Commercial Servs., Inc.*, 2011 WL 6202905, at *28–36 (Bankr. E.D. Ky. Dec. 13, 2011).  The bankruptcy court rejected CIT Group's argument that Commodities defaulted on the coal supply agreements when it failed to pay for coal invoiced on December 22, 2007.  That delivery was governed by an oral agreement, which the bankruptcy court found set a payment deadline of February 22, 2008.  *Id.* at *32.  Black Diamond's default on February 19, 2008, occurred before Commodities failed to pay for the December invoices.  Thus, the

bankruptcy court found that Commodities could use its right to damages under the coal supply agreements to offset what it owed to CIT Group for the outstanding deliveries. *Id.* at *33–36.

On appeal CIT Group challenged the bankruptcy court's determination that the December invoices were due on February 22, 2008. It argued that the invoices were actually due on January 21, 2008, and that Commodities defaulted when it failed to pay those invoices before Black Diamond entered bankruptcy. As the first party to default, Commodities could not declare Black Diamond in default and recover damages. *See* R. 16 at 39.

This court examined the bankruptcy court's decision de novo and issued a limited remand. *See* R. 20. The opinion identified six pieces of evidence cited by the parties relating to the due date for the December invoices. R. 20 at 24–25. The bankruptcy court considered only three of those pieces of evidence. Furthermore, the bankruptcy court relied on a piece of evidence without ever addressing the hearsay issue CIT Group raised in arguing that it was inadmissible. *Id.* at 25. The opinion remanded the case for the bankruptcy court to address the hearsay issue and determine the date the invoices were due. If Commodities defaulted first, the bankruptcy court was to determine as a matter of law whether Black Diamond waived the default (a conclusion implied by, but not stated in, the bankruptcy court's opinion). Finally, if Commodities committed an unwaived default, the opinion directed the bankruptcy court to address "what effect that has on Commodities' ability to claim that the [damages under the coal supply agreements] offset its obligations to CIT Group on the outstanding deliveries." *Id.* at 26–27.

CIT Group then filed a motion for rehearing asking this Court to cancel the remand in the name of judicial economy and instead decide the case fully in its favor.  R. 22; R. 22-1 at 5.  Not to be outdone, Commodities agreed that a remand is unnecessary but urged this Court to decide the case in its favor instead.  R. 27.

## DISCUSSION

Bankruptcy Rule 8015 does not provide a standard for district courts to use when deciding whether to rehear a bankruptcy appeal.  *See* Fed. R. Bankruptcy. P. 8015.  Rule 8015 is based on Rule 40 of the Federal Rules of Appellate Procedure, which governs motions for panel hearings.  *See id.* advisory committee's note.  So when faced with a Rule 8015 motion, district courts look to the rules governing Rule 40 motions.  *See PHH Mortg. Servs. v. Higgason*, No. 06-157-DCR, 2006 WL 2135497, at *1 (E.D. Ky. July 28, 2006).

The purpose of a motion for rehearing is to ensure that the district court "properly considered all relevant information in rendering its decision."  *Id.*  Therefore, motions may be granted in three cases:  (1) when the controlling law changes after the initial opinion; (2) when previously unavailable evidence becomes available, and (3) when a rehearing is "necessary to correct a clear error of law or prevent manifest injustice."  *Id.*  A motion for rehearing is not a chance for a do-over, and the party seeking rehearing bears the burden of showing that a rehearing is necessary.  *Id.*  As the name implies, a motion for *re*hearing is not the place for new arguments.  *See United States v. Shafer*, 573 F.3d 267, 275–76 (6th Cir. 2009) ("We typically do not consider arguments raised for the first time in a petition for rehearing."); *Easley v. Reuss*, 532 F.3d 592, 593 (7th Cir. 2008) ("It goes without saying that [a court] cannot have overlooked or misapprehended an issue that was not presented to it.")

(internal quotations omitted); *In re CBI Holding Co., Inc.*, 2010 WL 2287013, at *1 (S.D.N.Y. June 7, 2010) ("Neither new evidence nor new arguments are considered valid bases for Rule 8015 relief." (quotation omitted)).

## I.      CIT Group's Arguments for Rehearing

CIT Group asks this Court to simply enter judgment in its favor in lieu of the remand. Each of the three arguments CIT Group is either new or a repackaged version of an argument already addressed in this Court's earlier opinion. Thus, CIT Group has not shown that a rehearing is necessary to correct a "clear error of law or prevent manifest injustice." *Higgason*, 2006 WL 2135497, at *1.

Throughout this appeal CIT Group stated that Black Diamond first defaulted on the coal supply agreements on February 19, 2008. The Coal Supply Agreements specified more than thirteen "Events of Default," including: (A) filing for bankruptcy; (B) being forced into bankruptcy; and (C) becoming otherwise insolvent. Bankruptcy R. 117-4 at 13–14, Ex. 9 at CIT0546–47 ¶ 12(a)(viii). The Bankruptcy Court specifically found that Black Diamond defaulted on February 19, 2008, due to insolvency. *See The CIT Grp./Commercial Servs., Inc.*, 2011 WL 6202905, at *33 ("Black Diamond's insolvency on February 19, 2008, constituted an event of default under each of the Coal Supply Agreements . . . ."). During the appeal before this Court, CIT Group consistently used February 19, 2008, as the date of breach for Black Diamond. *See* R. 16 at 38 ("Commodities would likely allege that Black Diamond defaulted on February 19, 2008 when an order for relief was entered in Black Diamond's bankruptcy case."); R. 19 at 14–15 ("[T]he first chronological breach by Black Diamond that Commodities has raised and [CIT Group] concedes for purposes of this appeal

is the February 19, 2008 involuntary bankruptcy filing."); *id.* at 19 ("February 19, 2008 (Black Diamond's First Breach): An involuntary petition was filed against Black Diamond, which is its first alleged breach.").

In its motion for reconsideration CIT Group argues for the first time that the earliest Black Diamond could have defaulted was March 4, 2008, not February 19, 2008.  CIT Group and others forced Black Diamond into bankruptcy on February 19, 2008.  *See* Bankruptcy R. 117-8 Ex. 45.  On March 4, 2008, Black Diamond voluntarily filed for bankruptcy.[2]  On March 11, 2008, an order for relief was entered in the involuntary proceeding.  CIT Group says that Black Diamond first defaulted when it voluntarily filed for bankruptcy on March 4, 2008, not on February 19, 2008.  R. 22-1 at 8.  This new argument cannot be considered on a motion for rehearing.  *See Shafer*, 573 F.3d at 275–76.

CIT Group argues that this case falls within an exception to the no-new-arguments rule, but it is incorrect.  A new argument may be heard on rehearing "if extraordinary circumstances are present." *Id.* at 276 (quotation omitted).  In *Shafer*, the Sixth Circuit found extraordinary circumstances because:  (1) the case presented an issue of first impression in the federal appellate courts and would have persuasive force in other circuits; (2) the decision would bind future Sixth Circuit panels; (3) the new legal argument related directly to the Court's holding; and (4) the failure to raise the argument earlier was likely accidental rather than strategic.  *Id.* at 277.  Only one of those four factors is arguably present here.  This case

---

[2] CIT Group states that Black Diamond voluntarily filed for bankruptcy on March 11, 2008.  In support, it points to a letter from Commodities informing Black Diamond that an event of default had occurred based on the filing of the order of relief and the involuntary petition.  That letter does not provide a date for the voluntary filing.  *See* Exhibit 24, Bankruptcy R. 119-10 at 37.  The voluntary petition was actually filed on March 4, 2008.  *See* Chapter 11 Voluntary Petition, *In re Black Diamond Mining Co., LLC*, No. 08-70109 (Bankr. E.D. Ky. 2008), at R. 1.  This opinion uses the correct date, but the difference in dates does not affect the outcome of the motion.

does not present a novel legal question and will have little, if any, precedential effect. The

Sixth Circuit can correct any actual legal or factual errors in this Court's earlier opinion.

And there is simply no good reason (offered or imaginable) why CIT Group could not have

raised this argument in its initial appeal. The who-breached-first issue has been present since

the start of this litigation. *See, e.g.*, Bankruptcy R. 155 at 47–50; Bankruptcy R. 171 at 9–12.

And this Court allowed the parties to file eighty-page briefs—double the normal length of

briefs in this district—so CIT certainly had the space to make this argument. R. 17. Indeed,

CIT Group's motion implies that it deliberately chose not to make the argument on appeal.

*See* R. 28 at 6 (claiming that CIT Group conceded the date for the purposes of the appeal but

not "the entire case"). CIT Group argues that there is no need for a remand if it is correct

that March 11, 2008, is the date of default. Perhaps. But allowing a new argument just

because it relates to the basis for an earlier decision cannot be right. If that were the case,

parties would simply wait to see how an opinion shakes out and then, if it does not go their

way, offer the court a new, alternate way to decide the case. Such a system would render the

initial appeal moot, a mere test case for the parties. This is simply an ordinary case of an

appellant seeking a second shot at its appeal, which Rule 8015 does not permit.

Next CIT Group argues that this Court failed to address its "account stated" argument,

but that argument was the subject of this Court's remand. In its briefs before the bankruptcy

court and this Court, CIT Group pointed to New York's account stated doctrine. *See*

Bankruptcy R. 171 at 9; R. 16 at 73–74. Under the doctrine a party is bound by an invoice

that it receives, examines, and agrees to pay. A party's agreement can be implied if it fails to

object to an invoice within a reasonable amount of time. *See, e.g.*, *Liddle & Robinson, LLP*

*v. Garrett*, 720 F. Supp. 2d 417, 426 (S.D.N.Y. 2010) (collecting cases).  CIT Group faults this Court for not using the term "account stated" in the earlier opinion, as if those words alone have some talismanic significance.   But the Court's remand clearly covers the argument.  CIT Group's account stated argument can be summarized as follows.  First, CIT e-mailed Commodities stating that the payment deadline for the December invoices was January 21, 2008, but the bankruptcy court did not consider that piece of evidence.  Second, that e-mail triggers the account stated doctrine resulting in a January 21, 2008, due date.  On remand, the Court directed the bankruptcy court to (1) consider all admissible pieces of evidence related to the December invoices (including the CIT e-mail), and (2) determine whether there is a genuine issue of material fact as to when the December invoices were due. *See* R. 20 at 24–27.  So while CIT Group's account stated argument may not be mentioned by name, it clearly falls within the scope of the remand.

CIT Group's final argument is that a remand is unnecessary because Black Diamond could not have waived any breach by Commodities because it had assigned that right to CIT group.  This argument is also new.  The bankruptcy court accepted Commodities' argument that Black Diamond waived any possible breach by Commodities when Black Diamond failed to issue written notice of a default.  *See* Bankruptcy R. 155 at 49 (making the argument); *The CIT Grp./Commercial Servs., Inc.*, 2011 WL 6202905, at *33 (accepting the argument).  On appeal CIT Group argued that Black Diamond did not waive any breach by Commodities.  *See* R. 16 at 73.  CIT Group never argued that Black Diamond *could not* waive a breach by Commodities because it had assigned that right to CIT Group.  This new argument cannot be considered on a motion for rehearing.  *See Shafer*, 573 F.3d at 275–76.

Because CIT Group has not pointed to "a manifest error of fact or law," *Higgason*, 2006 WL 2135497, at *1 (quotation omitted), made by this Court, a rehearing is unnecessary.

## II.      Commodities's Argument for Rehearing

Like CIT Group, Commodities also asks the Court to enter judgment in its favor. Commodities made this request in its response brief rather than a cross-motion.  Because both of Commodities's arguments are new they would not support a rehearing even if raised in a cross-motion.  First, Commodities says that a breach of the oral agreements covering the December invoices does not constitute a default of the written-coal-supply agreements. R. 27 at 11–16.  But Commodities's argument has always been that it did not breach the oral agreements at all.  *See* Bankruptcy R. 155 at 47–451; R. 18 at 71–74.  This is the first time Commodities has argued that a breach of the oral agreements cannot be an event of default under the written coal supply agreements.   Second, Commodities argues that even if it defaulted on the *written* coal supply agreements, nothing changes.  Commodities interprets the default provision as allowing a party to terminate and recover damages after the other party defaults, whether or not the terminating party is also in default.  R. 27 at 18–20.  This argument is also new.  Because both of Commodities's arguments for rehearing are new, they cannot be considered on a motion for rehearing.  *See Shafer*, 573 F.3d at 275–76.

## CONCLUSION

Accordingly, it is **ORDERED** that the appellant's motion for rehearing, R. 22, is

**DENIED**.

This the 7th day of January, 2013.

Signed By:

*Amul R. Thapar*  AT

**United States District Judge**

11